Edith M. HUFFMAN and David Huffman, Husband and Wife
*v.* Robert E. ALDERSON

98-312                                           983 S.W.2d 899

Supreme Court of Arkansas
Opinion delivered December 17, 1998

*Law Offices of Susan A. Fox*, by: *Susan A. Fox*,for appellants.

*Bassett Law Firm*, by: *Tod C. Bassett* and *James M. Graves*, amicus curiae for Generali—U.S. Branch Insurance Company.

TOM GLAZE, Justice. We accepted certification of this case from the court of appeals under Ark. Sup. Ct. R. 1-2(b) and (d) because the court suggested that the case involved the interpretation of Ark. R. Civ. P. 55(c). According to the court of appeals, this case presents a Rule 55(c) issue that was mentioned, but not decided, in *Cossey v. Transamerica Ins. Co.*, 25 Ark. App. 258, 757 S.W.2d 176 (1988) — whether a trial court under Rule 55(c) has the power to set aside a default judgment at the request of a successful plaintiff. We do not reach this issue because we affirm the trial court on another basis.

Appellants Edith M. Huffman and her husband David Huffman filed suit against Robert E. Alderson about one year after Alderson allegedly drove his vehicle into the car Edith Huffman was driving. Alderson's vehicle was insured by Graward General, an agent of Generali—U.S. Branch Insurance Company. The Huffmans were unable to locate Alderson to serve him, and because Generali was unaware of Alderson's whereabouts, it would not agree to accept service on Alderson's behalf. Generali gave the Huffmans Alderson's last known address and offered to provide further assistance to locate Alderson, if necessary. Because the Huffmans still were unable to find Alderson to serve him, their suit was dismissed without prejudice by the trial court.

About two months after dismissal of the suit, the Huffmans filed a second lawsuit against Alderson, and this time obtained service on him. Alderson neither filed an answer, nor did he notify his insurer, Generali, of the lawsuit. Without informing Generali, the Huffmans moved the trial court for a default judgment, which the trial court granted. After a hearing, the Huffmans obtained a judgment in the total amount of $105,066.19. The Huffmans

later forwarded the default judgment to Generali for payment, but Generali refused to pay.

After Generali declined payment, the Huffmans, under Ark. Code Ann. § 23-89-101(b) (Repl. 1992), filed a direct subrogation action against Generali. Both parties moved for summary judgment. The trial court denied the Huffmans' motion and granted relief to Generali. The court determined that, under Generali's policy, coverage on Alderson's vehicle was dependent upon Alderson fulfilling his duties to cooperate with and to give notice to Generali regarding any pending litigation, and Alderson had failed to do either. The Huffmans appealed the trial court's decision to the court of appeals, and the court of appeals affirmed by an opinion not designated for publication. *Huffman v. Generali—U.S. Branch*, Case No. CA96-559 (April 9, 1997) (*Huffman I*). The Huffmans filed no petition for review with this court, but instead returned to the trial court that entered the Huffmans' default judgment against Alderson. In doing so, they filed a motion under Rule 55(c) to set aside the default judgment previously entered in order to try their case on its merits against Alderson. If they prevail, the Huffmans then could renew their efforts to require Generali to pay the judgment as provided by its policy with Alderson.

The trial court held a hearing on the Huffmans' motion, and while Alderson still failed to appear, the trial court granted Generali's request to proceed as *amicus curiae*.[1] After considering the Huffmans' and Generali's briefs and oral arguments, the trial court denied the Huffmans' Rule 55(c) motion wherein the Huffmans contended that, as successful plaintiffs, they had a right to set aside their default judgment because of (1) Alderson's misconduct in

---

[1] Although the Huffmans moved to strike Generali's *amicus curiae* brief, they do not raise that issue on appeal. Apparently, the Generali did not think it had standing to intervene, so it asked to file an *amicus* brief. We need not address this issue, but we note that we are unaware of a rule of civil procedure providing for an *amicus curiae* brief in these circumstances. *See Grantors to the Diaz Refinery PRP Committee Site Trust, et al., v. Employers National Insurance Corporation*, 318 Ark. 171, 884 S.W.2d 591 (1994) (held, without an appearance by a party to an appeal in the form of a brief, participation by *amicus curiae* on behalf of that party is not appropriate). We further note that Generali was permitted to file a brief as an *amicus curiae* in this appeal, but no objection was interposed.

failing to notify his insurer, Generali, of the second lawsuit, and (2) for other reasons justifying relief from the operation of the judgment. In denying the Huffmans relief, the trial court held that Alderson's failure to notify Generali of the lawsuit was not misconduct as that term is intended under Rule 55(c)(3), and that the Huffmans failed to show any justifiable reason to set aside their judgment under Rule 55(c)(4).

While the Huffmans bring this appeal arguing the trial court erred in interpreting Rule 55(c), and particularly Rule 55(c)(3) and (4), the simple answer in resolving this matter is that the Huffmans are barred from pursuing their case against Generali because the central issue here is the same one that has already been decided in the court of appeals in *Huffman I* — the Huffmans' direct action suit against Generali.

In *Huffman I*, the court of appeals stated that, while Generali had been aware of the Huffmans' first lawsuit against Alderson, the conclusive fact in support of the trial court's grant of summary judgment in Generali's favor was that neither Generali's insured, Alderson, nor the Huffmans ever notified Generali of the second lawsuit. As a result, the court of appeals held that, because coverage under Alderson's policy with Generali was contingent upon Alderson's fulfilling his duty to give notice of pending litigation, and he failed to do so, Generali had no duty to defend Alderson or pay any judgment acquired against him.

The Huffmans in this action now seek to undo the holding in *Huffman I*. They ask that the same default judgment that the court of appeals previously held that Generali did not have to pay in *Huffman I* should now be set aside so they can compel Generali's payment under the Alderson policy of any new judgment the Huffmans may obtain. The Huffmans' strategy is too late.

██ Generali argued below and on appeal that the doctrines of *res judicata* and collateral estoppel control the outcome of this case. We agree. The concept of *res judicata* has two facets, one being issue preclusion and the other claim preclusion. *John Cheeseman Trucking, Inc. v. Pinson*, 313 Ark. 632, 855 S.W.2d 941 (1993); *see also Crockett & Brown, P.A. v. Wilson*, 314 Ark. 578, 864 S.W.2d 244 (1993) (collateral estoppel, or issue preclusion,

bars relitigation of issues, law or fact, actually litigated in the first suit). Under the claim-preclusion aspect of the *res judicata* doctrine, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim. *Id.* *Res judicata* bars not only the relitigation of claims which were actually litigated in the first suit, but also those which could be litigated. *Coleman's Serv. Ctr. v. Federal Deposit Ins. Corp.*, 55 Ark. App. 275, 935 S.W.2d 289 (1996). Where a case is based on the same events as the subject matter of a previous lawsuit, *res judicata* will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *Id.* (citing *Swofford v. Swofford*, 295 Ark. 433, 748 S.W2d 660 (1988)). The doctrine of *res judicata* applies only when the party had a fair and full opportunity to litigate the issue in question. *Id.*

■ The doctrine of collateral estoppel or issue preclusion, on the other hand, bars the relitigation of issues of law or fact actually litigated by the parties in the first suit. *Id.* When an issue of fact or law is actually litigated and determined by a valid and final judgment and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. *Id.* (citing *Pinson*, 313 Ark. at 636). However, both claim preclusion and issue preclusion are applicable when the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question. *Bailey v. Harris Brake Fire Protection Dist.*, 287 Ark. 268, 697 S.W.2d 916 (1985).

■ Here, the Huffmans had every opportunity to litigate Generali's responsibility for payment of the insured's, Alderson's, liability under the policy in controversy. They litigated and lost that argument before the trial court and the court of appeals in *Huffman I*, and they are foreclosed from relitigating that issue again. The Huffmans received a default judgment against Alderson and used that judgment to proceed against Generali in *Huffman I*. Because *Huffman I* held that Generali is not liable to the Huffmans based on Alderson's breach of his policy with Generali, the Huffmans, under the doctrines of *res judicata* and col-

lateral estoppel, cannot now set aside the default judgment in order to once again attack Alderson's privy, Generali.

For the above reasons, we affirm the trial court's decision.

NEWBERN, BROWN, and IMBER, JJ., concur.

D AVID NEWBERN, Justice, concurring. The majority opinion reaches the correct result in affirming this case. Because we are not confronted with an action by the Huffmans raising the same claim upon which they first succeeded against Mr. Alderson, and because we are not confronted with the filing of an action by the Huffmans raising an issue previously litigated, although we may be aware of their desire to do so, I believe the discussion of *res judicata* and collateral estoppel is unnecessary.

The issue before us is solely whether the Trial Court erred in refusing to set aside the earlier judgment due to misconduct on the part of Mr. Alderson, Ark. R. Civ. P. 55(c)(3), or other reason justifying relief from the judgment. Ark. R. Civ. P. 55(c)(4).

The misconduct alleged is Mr. Alderson's failure to notify his insurer of the claim. By virtue of his inaction, Mr. Alderson deprived himself of insurance coverage. That was not misconduct to the direct prejudice of the Huffmans. Nor have we been given any other reason to set aside the default judgment which, after all, favored the Huffmans.

Underlying all of this is the language of Rule 55(c) that seems to contemplate setting aside a judgment only upon motion by a defendant who must "demonstrate a meritorious defense" unless the judgment is "void." The rule obviously does not contemplate allowing a party who has obtained a judgment by default to return to the trial court to have it set aside because of some error or failure to obtain an advantage which he or she perceives may have been lost due to his or her own failure. The Trial Court correctly declined to set the judgment aside.

BROWN, J., and IMBER, J., join in this opinion.